430 So.2d 472 (1983)
OCEAN'S EDGE DEVELOPMENT CORP., a Florida Corporation, Appellant,
v.
TOWN OF JUNO BEACH, a Florida Municipal Corporation, Appellee.
No. 82-1115.
District Court of Appeal of Florida, Fourth District.
February 16, 1983.
Rehearing Denied May 18, 1983.
*473 Bratten & Harris, and Larry Klein, West Palm Beach, for appellant.
James M. Adams and Charles W. Musgrove, West Palm Beach, for appellee.
GLICKSTEIN, Judge.
This is an appeal from an order, in the nature of a final judgment, dismissing appellant's complaint for declaratory judgment and concluding that appellant is not entitled to a certificate of occupancy for its 22 unit apartment building. We reverse and remand with direction to enter final judgment for appellant.
In 1979, appellant's predecessor in title applied for the building permit and the following year, for a duplicate permit. Appellant came into title in 1981; and commenced construction of the building. On June 1, 1981, it filed a declaration of condominium, committing the property to interval ownership or time-sharing. The following month, appellee enacted an ordinance, declaring a moratorium on the issuance of certificates of occupancy for time-sharing or interval ownership developments and thereafter extended the moratorium. The building was completed during litigation at the trial level and has remained unused since that time.
In its complaint, appellant alleged that, prior to the enactment of the moratorium ordinance, there were no ordinances which restricted or limited interval ownership condominiums; and that, in reliance upon the existing ordinances and before the moratorium, it paid $1,200,000 for the property to develop an interval ownership condominium as well as $300,000 for construction expenditures. Appellee's sole affirmative defense was that the interval ownership development was inconsistent with appellee's comprehensive development plan which was adopted in 1979, together with an implementing comprehensive zoning ordinance.
We start with the following premise recognized by this court in City of Hallandale v. Prospect Hall College, Inc., 414 So.2d 239, 240 (Fla. 4th DCA 1982):
Since zoning regulations are in derogation of private ownership rights, general zoning law provides that zoning ordinances are to be construed broadly in favor of the property owner absent clear intent to the contrary. 7 Fla.Jur.2d Building, Zoning and Land Controls § 59 (1978).
When we apply this premise to appellee's ordinances  as they existed when all the building permits were obtained, the property was purchased, the construction was undertaken and the declaration of condominium was recorded  we find nothing in their language to prohibit interval ownership or time-sharing.
All the language in the comprehensive development plan and the implementing zoning ordinances is consistent with the contemplated use. First, section 4.1 of the development plan defined "Dwelling" as:
Any building designed primarily for residential occupancy; "dwelling" does not include any hotel, motel, club or recreation vehicle.
"Dwelling Unit" was defined therein as:
One or more rooms within a dwelling which are arranged, designed or intended as a separate household, and which shall contain kitchen facilities.
"Multi-Family Dwelling" was defined therein as:
Three (3) or more separate dwelling units located within one dwelling.
*474 The comprehensive zoning ordinance  essentially drafted by the same planner as the development plan  contained definitions which were consistent with those in the plan. For example, section 2.43 defined "Dwelling, Multiple or Multiple-Family" as:
(Commonly known as an apartment house). A building, or portion thereof, used or designed as a residence for three or more families living independently of each other, having individual living units with each unit having cooking facilities and containing a living room and/or one or more bedrooms.
Section 2.55 defined "Hotel, Motel" as:
A building or structure kept, used, maintained, advertised as or held out to the public to be a place where sleeping accommodations are supplied for pay to transient or permanent guests or tenants in which five (5) or more dwelling units without individual kitchen or cooking facilities are furnished for the accommodation of such guests; and having or not having one (1) or more dining rooms, restaurants or cafes where meals or lunches are served to such transient or permanent guests, such sleeping accommodations and dining rooms, restaurants or cafes, if existing, being conducted in the same building or buildings in connection therewith.
Section 2.69 provided, in part:
Where more than twenty-five (25) percent of the units in a hotel, motel, motor hotel, boatel, motor lodge or tourist court have cooking facilities, such an operation shall be deemed a multiple-family dwelling and shall be subject to this zoning ordinance as a multiple-family dwelling.
Finally, section 2.101 defined "Transient Residential" as:
Those uses generally known as hotel, motels, hotels/motels or rooming houses.
This last definition perhaps is the most important because we believe the town, in large measure, prevailed at trial due to the trial court's reliance upon testimony that time-sharing use was transient in nature and inconsistent with the comprehensive development plan. The plan programmed transient use for the northerly beach area of the town, not the southerly beach area where this apartment building was located. The basis for the testimony lay in section 3.5 of the plan which described Seaward, the area of the town associated with the ocean, and which, in part, provided:
Much of the Seaward Area is planned for high-density residential use, transient residential (motels and associated uses), and beach clubs. The southern private portion of the Seaward Area is much lower in density than the northern portion and has no transient residential facilities.
The trial court, although expressly finding that the proposed time-sharing development was consistent with the RM-2 zoning district[1] in which the property was situate "because of the definitions in the zoning ordinance," nevertheless found the use to be transient and inconsistent with the development plan as well as a "substantial change of use from the residential apartments for which building permits were issued."
The error we perceive in the trial court's findings of inconsistency and substantial change of use lies in its deviation from the plain definitions within the plan and implementing zoning ordinance in favor of after-the-fact expert testimony as to legislative intent to fill in the cracks. Government cannot function in such after-the-fact fashion; property owners are entitled to rely upon the clear and unequivocal language of municipal ordinances. This principle is not innovative, nor does it originate with this court. In Rinker Materials Corp. v. City of North Miami, 286 So.2d 552, 554 (Fla. 1973), the supreme court said:
Where words used in an act, when considered in their ordinary and grammatical sense, clearly express the legislative intent, other rules of construction and interpretation are unnecessary and unwarranted. The intent of the North Miami *475 City Commission in its enactment of the zoning ordinance in issue is to be determined primarily from the language of the ordinance itself and not from conjecture aliunde. A statute or ordinance must be given its plain and obvious meaning.
Also see Carroll v. City of Miami Beach, 198 So.2d 643, 645 (Fla. 3d DCA 1967), where the court said:
It is our opinion that the City is bound by the express terms of its own ordinance in defining a "family" and that the word "family" cannot be construed thereunder in accordance with the meaning commonly ascribed to it by the public in general.
If the City desires a different meaning for its ordinance in the future, it may amend, modify, or change the same by legislative process.
(Emphasis supplied.)
The effect of the trial court's decision was to amend the ordinance as the town would have liked it to read, not as it read. Unfortunately, the concept of time-sharing was not considered during the legislative process which led to the subject ordinances. As a result, when we refer to the definitions, we can see there is neither inconsistency nor substantial change of use involved. In addition, the town has conceded that had the apartments in this multi-family dwelling been for rent for the customary period of time-sharing rather than sold on the basis of interval ownership, the town would have issued the certificate of occupancy.
As for the trial court's conclusion that the developer should be denied relief because it concealed its plans from the town to utilize time-sharing, this issue was neither pled nor proved by the town, thus should not have been a factor in the trial court's consideration. More important, time-sharing simply was not prohibited for this development by the town's ordinances; and the notion of concealment just clouded the true legal issues.
ANSTEAD and HURLEY, JJ., concur.
NOTES
[1] RM-2, as contained in the town's newly adopted comprehensive zoning ordinance, was described as "Residential Multi-Family Moderate Density," and included multiple family dwellings as a permitted use.