611 So.2d 1285 (1992)
Laurence N. BELAIR and Provident Management Corporation, Appellants,
v.
CITY OF TREASURE ISLAND, a Florida municipal corporation, Appellee.
Nos. 91-02402, 91-02413.
District Court of Appeal of Florida, Second District.
December 18, 1992.
Rehearing Denied February 4, 1993.
*1286 Brian P. Battaglia of Battaglia, Ross, Hastings & Dicus, P.A., St. Petersburg, for appellant Laurence N. Belair.
Steven L. Brannock and Stacy D. Blank of Holland & Knight, Tampa, for appellant Provident Management Corp.
Edward Foreman, St. Petersburg and W. Douglas Berry of Butler, Burnette & Pappas, Tampa, for appellee.
RYDER, Judge.
We have for review three issues raised by the parties to this appeal in which Laurence N. Belair and Provident Management Corporation (Provident) seek review of the trial court's entry of a permanent injunction enjoining Mr. Belair from renting his condominium unit more than six times per year, and enjoining Provident from acting as a rental agent on condominium property. We reverse.
The trial court's order was based on an interpretation of the City of Treasure Island's zoning code. The definitions contained in the zoning code relevant to our consideration of the issues raised on appeal are as follows:
Sec. 29-2. Definitions.
* * * * * *

Dwelling, residential shall mean a single or two-family dwelling which is not a tourist dwelling.

*1287 Dwelling, unit (d.u.) shall mean a single unit consisting of not less than five hundred (500) square feet of living area providing complete, independent living facilities for one (1) family, including permanent provisions for living, sleeping, eating, cooking and sanitation, but not including recreation vehicles, tents, hotels, motels or boarding houses.

Dwelling  Single family shall mean a building designed for and/or containing only one (1) dwelling unit.

Dwelling, tourist shall mean a single or two-family dwelling which is used as a tourist dwelling. A single or two-family dwelling shall be considered a tourist dwelling according to the following criteria:
(1) If the single or two-family dwelling is subject to or operates under an arrangement plan or design whereby the use of the dwelling or unit in the dwelling has been segmented over time so that owners, lessees or holders (regardless of the form of ownership or the form in which the right to use is expressed) of such unit has a recurring exclusive right to use either that dwelling or unit or another unit in the same dwelling according to a predetermined fixed schedule and only if the schedule would permit in any one (1) year a change or turnover of occupancy six (6) or more times, shall it be considered a tourist dwelling.
(2) If the single or two-family dwelling operates under or is subject to an arrangement plan or design whereby sleeping accommodations and sanitary facilities in the dwelling or in a unit in the dwelling are offered to the public or reserved to private parties and the use thereof by members of the public is primarily on a daily, weekly, monthly or seasonal basis, it shall be considered a tourist dwelling. Provided that when the dwelling or a unit in the dwelling is the sole residence of the guest, a rebuttable presumption arises that the dwelling or a unit is not being used as a tourist home. Provided further that if the occupancy of such dwelling or unit does not change more frequently than six (6) times in one (1) year, then a rebuttable presumption shall arise that the dwelling or unit is not being used as a tourist dwelling.

Dwelling, two family (duplex) shall mean a building designed for and/or containing two (2) dwelling units.

Dwelling, multiple family (apartment building) shall mean a building designed for and/or containing three (3) or more dwelling units.
Treasure Island Code, Ch. 29, Art. 1, § 29-2.
Land's End is a 177-unit condominium consisting of ten buildings located at 7500 Bayshore Drive, Treasure Island. Land's End is zoned RM-15 which permits multiple family dwellings pursuant to the zoning code of the City of Treasure Island. In 1984, Mr. Belair purchased a condominium at Land's End. At the time of the final hearing, Mr. Belair owned three condominium units at Land's End. In some instances, Mr. Belair's units are leased out to third parties more than six times per year. The Land's End Declaration of Condominium approves rentals of no less than seven days duration, but places no restriction on the maximum number of times a unit may be rented during a calendar year.
Sales and rentals of Land's End condominium units were conducted with the assistance of a number of local real estate brokers. Provident is a Pinellas County real estate broker and management company with its headquarters in Clearwater. In 1984, Provident began to assist in the rental of Land's End units.
Very few of the Land's End purchasers bought units with the expectation of living there full-time. Most of the owners purchased their units as a vacation home or future retirement home. In 1984 when Provident came on the scene full-time, 54 units had already been sold of which only two were owner occupied. That pattern of absentee ownership continued through subsequent sales.
*1288 Many Land's End absentee owners chose to rent out their units during periods when they were living elsewhere. It was contemplated in the condominium plans and documents that a real estate brokerage firm would be hired to assist in the management of the condominium and rentals of the units. Provident, being the most successful of the various brokers who were renting out units for the owners, was selected by the community association to manage the rental office.
Eventually, Provident signed contracts with just over 100 of the 177 unit owners to act as their rental agent. Each unit owner always remained free to contract with Provident or any other broker of their choosing. If the unit owner chose to contract with Provident, the owner was required to enter a contract which contained restrictions on the owners' use of their own condominium unit. The contract also set forth a detailed list of provisions required to be furnished in each condominium unit, from kitchenware to linens and furnishings.
Provident advertised Land's End aggressively. Signs were prominently displayed in the Chamber of Commerce building adjacent to City Hall and visitors were occasionally referred to Land's End by the Chamber. Provident also embarked upon a national and international marketing campaign, produced and distributed multicolored brochures, and placed advertisements in travel industry publications.
In May 1988, the City of Treasure Island (the City) issued an official cease and desist letter to Provident, U.S. Lend Lease the developer of Land's End, and the Land's End Owner's Association of which Mr. Belair is a member. The cease and desist letter in relevant part stated that the rental of condominium units on a short-term basis was prohibited as a tourist dwelling or hotel/motel within the RM-15 zoning district, according to section 29-182 of the Treasure Island Code (the Code).
In October 1988, the City filed a complaint for injunctive relief against Mr. Belair, individually, and Provident. Mr. Belair responded with a suit of his own seeking declaratory judgment and damages. The two cases were consolidated and remain consolidated in this court. The City moved for a temporary injunction. After an evidentiary hearing, the court held that Provident was engaged in a commercial operation at Land's End. Provident was enjoined from all rental activity for Land's End unit owners, either on or off-site. After the temporary injunction was entered, other brokers from offices off-site rented units for Land's End unit owners.
Both Mr. Belair and Provident separately appealed the entry of the temporary injunction to this court, which cases were both affirmed by per curiam opinions. Belair v. City of Treasure Island, 574 So.2d 145 (Fla. 2d DCA 1990); Provident Management Corp. v. City of Treasure Island, 572 So.2d 916 (Fla. 2d DCA 1990).
The City then sought to enforce its zoning code by permanently enjoining Mr. Belair from renting any of his units to third parties more than six times during any one calendar year. The trial court heard testimony by City officials that Land's End was classified as a multiple family dwelling. The City Manager and corporate representative, Peter Lombardi, testified that Land's End was a multiple family dwelling, and not a single-family or two-family dwelling. Mr. Lombardi also testified that Mr. Belair's units were not single-family dwellings. Mr. Lombardi also admitted that the six times per year turnover only applied to single-family and two-family dwelling units as those terms are defined in section 29-2 of the Code. Mr. Lombardi also testified that the Code does not prohibit the leasing out of condominium units by their owners.
In addition, Mr. Ockunzzi, former executive director of the Tampa Bay Regional Planning Council and the City's expert witness testifying in the area of land use planning, agreed that within the four corners of the City's zoning code there are no restrictions with respect to the number of rental turnovers in a one-year period for a *1289 condominium such as Land's End in the RM-15 zoning district.
Notwithstanding the testimony of the city officials in the proceedings below, the trial court held that the condominium units at Land's End were single-family dwellings and classified them as "tourist dwellings." In holding that the condominium units were single-family dwellings, the court applied the six turns per year rental restriction to Mr. Belair, and permanently enjoined Mr. Belair from renting his condominium units to third parties more than six times during any one calendar year.
The trial court's order also permanently enjoined Provident from maintaining an onsite rental and management office. The trial court's order does permit Provident to rent Land's End units for unit owners from an off-site location outside the City's RM-15 medium density residential zoning district. This timely appeal ensued.
First, the City's argument that the law of the case has been established here is without merit. The fact that this court affirmed the trial court's previous order granting a temporary injunction does not prohibit an appeal on the order granting a permanent injunction involving the same facts. See Smith v. Housing Authority of Daytona Beach, 3 So.2d 880 (Fla. 1941) (purpose of temporary injunction is to maintain status quo; such an order is not conclusive); Pearce v. Pearce, 97 So.2d 329 (Fla. 2d DCA 1957).
Appellants argue that the trial court erred in holding that each condominium unit in Land's End is a single family dwelling. We agree. The plain definitions in the code provide that a multiple family dwelling is a building containing three or more dwelling units. There is no question that the buildings which make up Land's End contain more than three dwelling units. The City's own witnesses testified that Land's End is a multiple family dwelling under the Code. "A statute or ordinance must be given its plain and obvious meaning." Ocean's Edge Development Corp. v. Town of Juno Beach, 430 So.2d 472, 475 (Fla. 4th DCA), review denied, 436 So.2d 101 (Fla. 1983) (quoting Rinker Materials Corp. v. City of North Miami, 286 So.2d 552, 553 (Fla. 1973)). The trial court erred in holding that the condominium units were separate single family dwellings. This holding does not comport with the plain and obvious meaning of the definitions in the Code.
The City argues that Provident's operation at Land's End causes Land's End to fall within the definition of a hotel or motel.
Hotel or motel shall mean a building or buildings under common ownership, interest and single management, as licensed by the State, containing individual guest rooms for which daily or weekly lodging is provided to the more or less transient residences of individuals or families. Each building shall have a single utility service.
Treasure Island Code, Ch. 29, Art. 1, § 29-2. At Land's End, there is no "common ownership" and no "single utility service." Accordingly, Land's End does not fit within the plain and obvious meaning of a hotel or motel under the Code.
The City argues that Provident's conduct in acting as an on-site rental agent gives Land's End the attributes of a hotel or resort. However, it is irrelevant that Land's End may have some common attributes of a hotel, where the Code defines hotel in plain, unambiguous terms. One must look to the definition in the Code for a determination of what type of dwelling is at issue. See Ocean's Edge. The condominium units in Land's End are not under common ownership. The City argues that Provident's detailed rental contract essentially passes all the attributes of ownership, except the fee title, to Provident. Accordingly, the City claims, there is common ownership in Provident. The City's contention fails in that it does not take into account the seventy or so owners who have not contracted with Provident, which results *1290 in Land's End not being under common ownership. In addition, each unit has its own utility service.
"Hotel" cannot be construed under the code in accordance with the meaning commonly ascribed to it by the public in general. "If the City desires a different meaning for its ordinance in the future, it may amend, modify, or change the same by legislative process." Ocean's Edge, 430 So.2d at 475 (quoting Carroll v. City of Miami Beach, 198 So.2d 643, 645 (Fla. 3d DCA 1967). This court is not going to legislate for the elected officials of Treasure Island.
In its order, the trial court also held that Provident's conduct in acting as an onsite rental agent for the owners of the condominium units was a commercial operation constituting "an on-going and continuing violation of the applicable zoning ordinances of the City." Provident contends that its conduct was not in violation of the Code. The term "commercial" is not defined in the Code. Although counsel for the City alluded to a prohibition against commercial activity set forth in the Code, we are unable to locate any provision concerning commercial activity.
In any event, Provident is not taking any action that the individual condominium unit owners could not undertake to do themselves, e.g., advertise the units for rent, rent the units as many times per year as desired for no less than one week, collect rent, clean the units between renters, etc. The condominium documents provide for an on-site rental agent for the convenience of the unit owners. Provident was chosen to maintain an on-site office by the condominium owners' association.
The City argues that Provident's operation at Land's End caused an increased utilization of the amenities at Land's End to the detriment of the full-time residents, additional noise due to late night check-ins and less attention to care of the facilities by short term visitors. Even if we were to find that Provident's presence at Land's End somehow violated the Code, the City has failed to point out how this would benefit the complaining full-time residents. In fact, prohibiting Provident's presence on Land's End property would not change the use of the property, but only require unit owners to travel across town for rental services. This may cause even more commotion on the condominium property.
The presence of a rental agent on condominium property, who is providing a desired service to the unit owners, can be deemed an accessory use. Section 29-182 of the Code provides that "[t]he following uses shall be allowed within an RM-15 medium residential district ... (1) Permitted uses: ... [m]ultiple-family dwelling ... (3) Accessory uses: ... [o]ther accessory uses customarily incidental to a permitted use... not involving the conduct of a business." The City argues that Provident's activities on Land's End involve the "conduct of a business" in violation of the Code. Provident's officers testified that Provident is a business. Provident's officers also testified that Provident's activities on Land's End property are limited to services for Land's End unit owners only.
Provident's activities on Land's End property, in the RM-15 zoned district is not the "conduct of a business" in the traditional sense. "Conduct of a business" or "business" is not defined in the Code. However, we may glean what are acceptable activities from other permitted accessory uses in the RM-15 district. For example, rental offices at apartment complexes, lawn maintenance services at any multiple family dwelling which maintains its equipment on the dwelling premises, coin-operated laundry facilities on multiple family dwelling property and newspaper racks located on multiple family property. All of these activities are currently permitted accessory uses on multiple family property within the RM-15 zoned district.
The City's strict construction of the term "conduct of business" would prohibit all of these activities. All of these examples are businesses which operate for a profit, similar *1291 to Provident's operation at Land's End. However, because the business which is conducted on the RM-15 multiple family property serves only the residents of that particular property, the activities are permitted as accessory uses. See International Co. v. City of Miami Beach, 90 So.2d 906 (Fla. 1956); City of Miami Beach v. Uchitel, 305 So.2d 281 (Fla. 3d DCA 1974). Accordingly, we hold that Provident's activities constitute a valid accessory use and do not violate the Code.
In addition we hold that under the City's Code, Land's End is a multiple family dwelling and therefore Mr. Belair is not limited under the Code to the number of times he may rent his condominium unit in a calendar year. The trial court's order granting a permanent injunction enjoining Mr. Belair from renting his condominium unit more than six times per year and enjoining Provident from conducting onsite rental activities is reversed and set aside.
Reversed.
LEHAN, C.J., and HALL, J., concur.