862 So.2d 947 (2004)
Andrea M. KLAK and Kenneth P. Klak, wife and husband; Warren L. Garland and Dorothea T. Garland, husband and wife; Jack B. Slorah and Patricia M. Slorah, husband and wife; James R. Cobb and Gloria S. Cobb, husband and wife; Thomas J. Ciriello, Susan Light, Hans Walter Selig, and Anastasia R. Seelig, co-trustees; David P. Kennedy and Susan M. Kennedy, husband and wife; Bruno Gallelli and Maria Gallelli, husband and wife; Carl Conrad; John S. Havill; Dr. Laz N. Kavouklis and Maria M. Kavouklis, husband and wife; Charles E. Mainard and Patricia J. Mainard, husband and wife; Gail M. Fern, as trustee of the Gail M. Fern trust; Julia Ann Roberts; Kevin K. Moran; Frances T. Achnitz and William P. Achnitz, wife and husband; K.M. Taylor; John T. Wehlau and Cheryl Lynne Wehlau, husband and wife; Robert J. Hildenbrand and Lan Hildenbrand, husband and wife; Harry W. James, Jr., and Fran James, husband and wife; Vincent A. Tuccio and Carolyn M. Tuccio, husband and wife; Glenn B. Shane and Lara G. Shane, husband and wife; Kimberly D. Campbell; James P. Delellis and Ruth Delellis, husband and wife; Theodore Maslo and Cynthia Maslo, husband and wife; John Hummell; James N. Dishman, Jr., and Joyce A. Dishman, husband and wife; Thomas R. Vrecenak; Charles C. Richards and Sharon P. Richards, husband and wife; Judith Ann McDermot; Ronald E. Miller; Elizabeth Fryer; Edward Stuhl and Joan Stuhl, husband and wife; Sam Sahagian and Jo Ann Sahagian, husband and wife; Joseph Dwyer and Sharon A. Dwyer, husband and wife; Charles J. Preston; Stephen Gayle; Diane Jude; Gerard P. Benatar; Brady *948 M. Shirley and Margie R. Shirley, husband and wife; Fred B. Leiner; Robert P. Kelly and Anna R. Kelly, husband and wife; Noel S. Tenebaum; Lucille Laprade; Walter S. Ksocomb and Cynthia C. Ksocomb, husband and wife; Cynthia L. Evans; Gregory R. Henderson and Vicky Hendeson, husband and wife; Bernard L. Mayzell and Nataliew Mayzell, husband and wife; Ted W. Walters; Harold Kogut and Deanna Kogut, husband and wife; Sidney P. Cooper and Susie Cooper, husband and wife; Gerry R. Cline and Susan T. Cline, husband and wife; Jack Peterson and Suzie Peterson, husband and wife; David Larson and Delyn Larson, husband and wife; George Nowak; Maria Depeirn; George M. Sonnett and Elizabeth E. Sonnett, husband and wife; Fernando L. Arroyo; B.S. Safley; R. Enid Gaud; Warren Scherer and Nancy Scherer, husband and wife; Richard G. Ingher; and Gerald W. Conrad and Bonita A. Conrad, husband and wife, Appellants,
v.
EAGLES' RESERVE HOMEOWNERS' ASSOCIATION, INC., a/k/a Nature's Watch, a Florida not for profit corporation, Appellee.
No. 2D01-4727.
District Court of Appeal of Florida, Second District.
January 16, 2004.
*949 C. Philip Campbell, Kevin H. Graham, and Mark A. Connoll of Shumaker, Loop & Kendrick, LLP, Tampa, for Appellants.
Gail M. Fern, pro se.
James R. Cobb, pro se.
No Appearance for Appellee.
Henry A. Stein and Phyllis J. Towzey of Stein & Towzey, L.L.P., St. Petersburg, for Amicus Curiae Berger Parties.
CANADY, Judge.
A group of aggrieved homeowners appeals a final declaratory judgment determining that their homeowners' association is liable for the cost of reconstructing defective walls of dwelling units. Because we conclude that the governing declaration of covenants and restrictions does not impose such liability on the homeowners' association, we reverse the declaratory judgment.

I. BACKGROUND
Kenneth P. Klak and Andrea M. Klak, along with ninety-seven other owners (the Klak group) of units in the Eagles' Reserve community, filed an action (the Klak suit) seeking declaratory relief against the Eagles' Reserve Homeowners' Association, Inc. (the association). Eagles' Reserve is a community compound of townhouses and villas in which each dwelling unit and the land on which it is located is in fee simple ownership. Eagles' Reserve thus is not a condominium.
The conflict between the Klak group and the association arose from the association's decision to undertake the repair and substantial reconstruction of certain dwelling *950 units that were affected by serious construction defects. The Klak group contended that the governing declaration of covenants and restrictions (the declaration) did not authorize the association to undertake the reconstruction project. In its complaint, as amended, the Klak group sought: (1) a judicial declaration concerning the association's duties and responsibilities with respect to the construction defects; (2) relief for breach of fiduciary duty by the association; and (3) an accounting by the association. It appears that the position of the Klak group was related, at least in part, to its concern that the association's assumption of responsibility for the repairs and reconstruction would adversely affect the ability of individual homeowners to pursue insurance claims for the damages to their units. The Klak group posits a scenario in which individual homeowners would be unable to collect under their homeowner's insurance but would bear the economic burden of the repairs and reconstruction through maintenance assessments imposed by the association.
After the filing of the Klak suit, Harold Berger, as trustee of the estate of Fred Berger, deceased, and a group of other Eagles' Reserve homeowners (the Berger group) filed suit (the Berger litigation) against the association seeking dissolution of the association and the appointment of a receiver or custodian for the association. While the Klak group claimed that the reconstruction project undertaken by the association was unauthorized, the Berger group contended that the association had failed to pursue the reconstruction project with sufficient diligence. The Klak group intervened in the Berger litigation. Although the Klak suit and the Berger litigation were never formally consolidated, the same judge ultimately presided over both proceedings and dealt with the claims in the two actions as though they had been consolidated.
Prior to the entry of the final declaratory judgment that is now under review, the trial court considered the Berger group's motion for appointment of a receiver or custodian. A hearing on the motion was conducted on June 12, 2001. On July 11, 2001, the trial court entered an order on motion for appointment of receiver. In that order, the trial court determined that the association had the obligation under the declaration to repair and reconstruct the exterior walls of the dwelling units "from the interior coat of paint to the outside of the buildings." The court withheld ruling on the request for the appointment of a receiver but maintained its jurisdiction "to appoint a Receiver if the Court finds the Board of Trustees is recalcitrant in carrying out the Association's obligations pursuant to the Court's rulings described herein."
Thereafter, on October 9, 2001, the trial court entered an order appointing a receiver/custodian. The trial court determined that the Berger group had
presented a prima facie case that the... board of directors [was] engaging in waste and misapplication of corporate assets by its refusal to proceed with collections of accounts receivable and with repairs and maintenance to the exterior of the dwelling units as required by the applicable Declaration, The Articles of Incorporation[,] and the requirements of Florida law.
The court ordered the receiver to complete specified repairs to certain structures and authorized additional repairs to certain other structures.
In the meantime, on June 20, 2001, the trial court had entered the final declaratory judgment in the Klak suit, and the Klak group then instituted this appeal. The trial court entered the final declaratory *951 judgment even though a motion to dismiss filed by the Klak group was pending and no answer to the complaint had been filed by the association. The Klak group also subsequently sought interlocutory review in this court of the order appointing receiver/custodian in the Berger litigation. The order, however, was per curiam affirmed without opinion. Klak v. Berger, 818 So.2d 512 (Fla. 2d DCA 2002) (Table).
During the pendency of this appeal, leadership of the association changed hands and the association shifted its position to align itself with the Klak group. In the briefing and argument of the case, the sole support for affirmance of the final declaratory judgment has come from the Berger group, who is not a party to this proceeding but has appeared as amicus curiae.

II. ISSUES ON APPEAL
The Klak group urges that the final declaratory judgment is based on the trial court's erroneous interpretation of the declaration. The fundamental substantive issue presented is whether the declaration provides for the association to make structural repairs to the walls of the units in the development. The Berger group argues that the trial court properly interpreted the declaration and that further litigation of the issue is, in any case, precluded by the doctrines of law of the case and res judicata. We are therefore also presented with a threshold procedural issue: whether the order appointing receiver/custodian which was per curiam affirmed without opinion by this court precludes further litigation concerning the proper interpretation of the declaration.

III. ANALYSIS
A. The Effect of the Order Appointing Receiver/Custodian
Res judicata and law of the case are related doctrines which preclude the relitigation of previously determined matters under circumstances where such relitigation would be unjust or inappropriate. Both doctrines are based on considerations of judicial economy and are aimed at preventing undue expense and vexation to litigants as well as avoiding inconsistent results. Although the purpose and effect of the doctrines of res judicata and law of the case are similar, the conditions for application of the respective doctrines are different.
"The rules of res judicata state when a judgment in one action is to be carried over to a second action and given a conclusive effect there." Restatement (Second) of Judgments § 13 cmt. a (1982). "[T]he law of the case doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing principle in later stages." Lawrence B. Solum, Moore's Federal Practice ¶ 134.01[2] (3d ed.2003).
1. Res Judicata
Res judicata is only applicable where there is a relevant prior final judgment. See Fla. Dep't of Transp. v. Juliano, 801 So.2d 101, 105 (Fla.2001) (stating that "[a] judgment on the merits rendered in a former suit" is required for application of res judicata) (citations omitted); Thoman v. Ashley, 170 So.2d 332, 333 (Fla. 2d DCA 1964) ("One of the necessary elements in rendering a cause res judicata is a prior final judgment.") (citation omitted); Donnell v. Indus. Fire & Cas. Co., 378 So.2d 1344, 1346 (Fla. 3d DCA 1980) ("No order may be res judicata as to a subsequent case unless it is a final judgment which disposes of the controversy in the first one.") (citations omitted).
Here, the Berger group argues that the order appointing receiver/custodian *952 in the Berger litigation is a basis for invoking the doctrine of res judicata to preclude relief to the Klak group in the Klak suit. But the order appointing receiver/custodian is not a final judgment, and no final judgment has been entered in the Berger litigation. The doctrine of res judicata thus has no application here.
2. Law of the Case
In Juliano, the supreme court explained the basic difference between res judicata and law of the case and summarized the principles governing application of the doctrine of law of the case:
Where successive appeals are taken in the same case there is no question of res judicata, because the same suit, and not a new and different one, is involved. Under these circumstances, the doctrine of the law of the case applies. The doctrine of the law of the case is also a principle of judicial estoppel, but it is more limited and more flexible in scope. The doctrine of the law of the case requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings. Under the law of the case doctrine, a trial court is bound to follow prior rulings of the appellate court as long as the facts on which such decision[s] are based continue to be the facts of the case. Moreover, even as to those issues actually decided, the law of the case doctrine ... provides that an appellate court has the power to reconsider and correct an erroneous ruling that has become the law of the case where a prior ruling would result in a "manifest injustice."
801 So.2d at 105-06 (citations omitted).
Juliano sets forth a further limitation in the application of the doctrine:
[W]here a previous appellate court has given no explanation for its decision, a subsequent appellate court is not bound by the law of the case unless a determination concerning the propriety of the trial court's order is necessarily inconsistent with every possible correct basis for the earlier rulings of the appellate court.
Id. at 108.
The case law also establishes that the law of the case doctrine will not be employed to give preclusive effect to a decision or determination that was "based on a less-than-full hearing." Arch Southeast Communications, Inc. v. Abraham Communications, Inc., 702 So.2d 556, 558 (Fla. 2d DCA 1997) (holding that decision denying motion to compel arbitration which was affirmed on appealdid not preclude further litigation concerning validity of underlying agreement between the parties). The issuance or denial of a preliminary injunction is the paradigmatic circumstance where a determination is made by a court without the benefit of a full hearing of the issues. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) ("[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.") (citations omitted). Because a decision based on a less-than-full hearingsuch as the issuance or denial of a preliminary injunctionis by its very nature provisional, it would be nonsensical to give it binding effect on the subsequent proceedings in the same case. This is true, of course, even where the tentative determination of a trial court has been the subject of interlocutory appellate review. See Belair v. City of Treasure Island, 611 So.2d 1285, 1289 (Fla. 2d DCA 1992) ("The fact that this court affirmed the trial court's previous order granting a temporary *953 injunction does not prohibit an appeal on the order granting a permanent injunction involving the same facts.") (citations omitted); Ladner v. Plaza Del Prado Condo. Ass'n, 423 So.2d 927, 929 (Fla. 3d DCA 1982) ("[A]ny expression on the merits of the case by an appellate court reviewing an order granting or denying a preliminary injunction, where review is based on a record made at a less-than-full hearing, will not be binding at trial on the merits.")
Here, the order appointing receiver/custodian was by its very nature a provisional order that should not be given binding effect in the subsequent proceedings in the Klak case and the Berger litigation. The tentative nature of the court's order arises from the fact that the appointment of a receiverlike the issuance of a preliminary injunctionis ordinarily a step taken to preserve the status quo pending the ultimate resolution of the dispute between the parties. And here, the order itselfby its statement that the Berger group "presented a prima facie case" makes explicit that it was not based on a full hearing and consideration of all the relevant facts and legal issues.
We thus conclude that the trial court's interpretation of the declaration in the Berger litigation is not the law of the case. Because we have determined that the order appointing receiver/custodian was based on a less-than-full hearing, we need not consider whether the per curiam affirmance without opinion by this court in the Berger litigation would have been sufficient under the circumstances to establish the law of the case. Similarly, we need not consider whether the Klak suit and the Berger litigation are the "same case"or part of the same casefor purposes of applying the law of the case doctrine. We do note, however, that the procedural posture of this appealin which the Berger group does not appear as a partyraises serious questions concerning whether the Klak suit should be considered the "same case" as the Berger litigation.
B. The Responsibility of the Association Under the Declaration
Paragraph 8.2 of the declaration, which sets forth the maintenance responsibilities of the association, states in pertinent part:
The Association shall have the right and obligation to maintain the exterior of the Dwelling Units, including the landscaping on the Lot, in good order and repair, including, but not limited to the following: painting exterior building surfaces; repairing, replacing and caring for roofs, gutters, down spouts; mowing, trimming and fertilizing trees, shrubs and lawns; maintaining and repairing walks, driveways, roadways, and any other exterior improvements; but not including exterior components of interior systems such as air conditioning compressors, spa filters and pumps, vents, etc. All such maintenance shall be performed utilizing such materials, and such colors and quality as that originally utilized by the Developer or later specified by the Association and/or the DRB, as appropriate. Such exterior maintenance, including landscape maintenance, painting, etc., shall be performed in accordance with frequency standards to be determined, from time to time, by the Developer and/or the Association. The Developer and/or the Association, their employees and agents may enter upon any Lot and upon the exterior of any Dwelling Unit to provide for the exterior maintenance upon each such Dwelling Unit or Lot. Such entry by the Developer or the Association or any of their employees or agents shall not be a trespass and by accepting the deed for a Lot, the owner expressly grants to the Developer and the Association *954 the continuing permission to do so, which permission may not be revoked. The Owner may not alter the exterior landscaping on a Lot in any fashion without the express written consent of the Developer and/or the Association.
The core of the declaration provision at issue states that "[t]he [a]ssociation shall have the right and obligation to maintain the exterior of the Dwelling Units." This case thus turns on the meaning of the phrase, "the exterior of the Dwelling Units." As we have previously noted, in the final declaratory judgment, the trial court determined that "the term `exterior of the Dwelling Units' includes everything from the interior coat of paint to the outside of the buildings." Based on this interpretation of the declaration, the trial court determined that the association has the responsibility to repair and reconstruct the damaged and defective exterior walls of the units.
The trial court's ruling regarding the meaning of the declaration is subject to de novo review. See Kaplan v. Bayer, 782 So.2d 417, 419 (Fla. 2d DCA 2001) ("Because interpretation of a contract is a question of law, we apply a de novo standard of review."). We conclude that the trial court's interpretation of the text of the declaration is unreasonable and erroneous, because in interpreting the declaration the trial court neglected to give effect to the commonly understood meaning of the word "exterior." See Interfirst Fed. Sav. Bank v. Burke, 672 So.2d 90, 92 (Fla. 2d DCA 1996) ("Contract language must be given its plain meaning."); Schechtman v. Grobbel, 226 So.2d 1, 3 (Fla. 2d DCA 1969) ("[C]learly written provisions of contracts entered into by ordinary men should be construed in the light of common understanding."); Beans v. Chohonis, 740 So.2d 65, 67 (Fla. 3d DCA 1999) (stating principle of contract interpretation that words must be "given their plain and ordinary meaning").
The primary definition of the noun exterior is "the outer surface or part." Random House Unabridged Dictionary 684 (2d ed.1993); see also The American Heritage Dictionary of the English Language 648 (3d ed.1992) ("[a] part or a surface that is outside"). Accordingly, the plain meaning of the phrase "the exterior of the Dwelling Units" is the outer surface of the dwelling units. That is a far different meaning than "everything from the interior coat of paint to the outside of the buildings"the meaning assigned to the phrase by the trial court. The trial court reads the declaration as though it made reference to the exterior walls of the dwelling units. But the declaration contains no such reference or anything equivalent to such a reference. The words of the declaration do not justify treating it as though it were a condominium, which is the practical effect of the trial court's ruling. See Richard D. DeBoest, Creating the Fee Simple Condominium, Florida Condominium Law and Practice, § 4.2, at 4-7 (The Fla. Bar 3d ed.2003) (setting forth sample condominium declaration imposing maintenance obligation on condominium association for "[a]ll exterior building walls" (¶ 6.1.8), and defining individual owner's unit as bounded by "the finished and undecorated interior surfaces of the perimeter walls of the unit" (¶5.1.2)).
In addition to the plain meaning of the term "exterior," the consistent tenor of the entire maintenance provision of the declaration points to the conclusion that the association's responsibility for the maintenance of the walls of the units pertains only to the outer surfaces of those walls. The reference to "painting exterior building surfaces" is a clear indication that the scope of the association's responsibilities *955 does not extend as far as the trial court would have it.
The specific reference to "repairing, replacing[,] and caring for roofs, gutters, downspouts" does nothing to undermine our interpretation of the general language providing for the maintenance of the exterior of the units. The language of the declaration makes clear the duty of the association with respect to replacing the roofs of the units. The specific language in the declaration on that pointtogether with the absence of similar language with respect to the repair and replacement of defective walls of the unitsreinforces our conclusion that the trial court's interpretation of the declaration was erroneous.

IV. CONCLUSION
We therefore reverse the final declaratory judgment and remand for proceedings consistent with this opinion.
Reversed and remanded.
NORTHCUTT and COVINGTON, JJ., Concur.