700 So.2d 87 (1997)
Betty SIMPSON, Personal Representative of the Estate of Morena Simpson, Deceased, Appellant,
v.
CITY OF MIAMI, Appellee.
No. 96-1835.
District Court of Appeal of Florida, Third District.
October 1, 1997.
David J. Glantz, Miami, for appellant.
A. Quinn Jones, III, City Attorney, and Theresa L. Girten and Kathryn S. Pecko, Assistant City Attorneys, for appellee.
Before LEVY, GREEN and SHEVIN, JJ.

*88 ON MOTION FOR REHEARING GRANTED

PER CURIAM.
We grant the motion for rehearing, vacate the July 2, 1997, opinion and substitute the following opinion.
Betty Simpson appeals an order dismissing her complaint against the City of Miami on sovereign immunity grounds. We reverse.
The trial court erred in dismissing the complaint with prejudice. We reverse and remand with instructions to allow Simpson to amend her complaint to allege an arrest. If it is determined that City of Miami Police Officer Fuentes's action of securing the domestic violence injunction violator in the police cruiser, after having responded to a call about an injunction violation, constituted an arrest of the violator, then pursuant to the section 741.30(9)(b), Florida Statutes (1993)[1] provision that upon arrest the violator "shall be held in custody until brought before the court as expeditiously as possible [,]" (emphasis added), the officer had no discretion under sovereign immunity principles to release the violator, see Everton v. Willard, 468 So.2d 936 (Fla.1985), and was required by the statute to take the arrested violator before a judge.
Dismissal reversed, cause remanded.
LEVY and GREEN, JJ., concur.
SHEVIN, Judge, specially concurring.
I concur with the majority opinion, but write separately to explain why the special relationship referenced in Everton v. Willard, 468 So.2d 936 (Fla.1985), exists in this case and why dismissal was error. The complaint states a cause of action and, contrary to the City of Miami's assertion, the defendants are not shielded by sovereign immunity because there was a special relationship between the plaintiff's decedent and the police department, and the officer owed the decedent a duty of care. Everton v. Willard, 468 So.2d 936, 937 (Fla.1985).
The complaint relates the tragic scenario that culminated in Morena Simpson's untimely death. In June 1993, Ms. Simpson obtained a Permanent Injunction for Protection against domestic violence under section 741.30, Florida Statutes (1993). The injunction restrained Carl Hurd from committing any abuse, threats or harassment against Ms. Simpson.
On March 24, 1994, Hurd visited Ms. Simpson, began arguing with her, threatened to kill her, and left the residence. Ms. Simpson telephoned the City of Miami Police Department ["Department"]. The Department was well aware of the discordant relations between these persons, having previously responded to other calls to intervene. Upon receiving the call, and confirming the existence of an injunction, the Department dispatched Officer Fuentes to the scene. The officer located Hurd and placed him in his police cruiser. However, Hurd began pleading with the officer to release him, promising to leave Ms. Simpson alone. As fate would have it, persuaded by Hurd's pleas, the officer released Hurd. The next day, Hurd, not unexpectedly, returned to Ms. Simpson's home and shot her to death.
This action was brought by Betty Simpson, as personal representative of the estate of Morena Simpson, against the City of Miami and the officer to recover damages for Ms. Simpson's wrongful death. The complaint alleged, inter alia, that the domestic violence protection statute created special protection for the benefit of domestic violence victims, that the decedent was within the special protective sphere of the statute and that by releasing Hurd, after locating and confining him to the police cruiser, the officer breached his duty of care to Morena Simpson. The complaint asserted that the officer's act of restraining Hurd in the cruiser was a specific operational act not shielded by immunity.
The City of Miami filed a motion to dismiss the complaint on the basis of sovereign immunity under section 768.28, Florida Statutes, asserting that Officer Fuentes had discretion in determining whether to arrest *89 Hurd and owed no special duty to the decedent. The trial court granted the motion, dismissing the complaint.
The Florida Supreme Court in Everton recognized that "if a special relationship exists between an individual and a governmental entity, there could be a duty of care owed to the individual." Everton, 468 So.2d at 938. See Bowden v. Henderson, 700 So.2d 714 (Fla. 2d DCA 1997). I believe that the plaintiff's complaint in this case sufficiently establishes that such a special relationship existed between Ms. Simpson and the Department by virtue of the injunction issued by the court for her protection pursuant to the Florida Legislature's special protective measures addressing the ever-growing horrors of domestic violence in our society. See §§ 741.29.31, Fla. Stat. (1995).
In enacting the domestic violence protection and injunction statutes, the legislature declared domestic violence to be an illegal act and dictated police conduct in response to domestic violence situations. § 741.29, Fla. Stat. (1995). This legislation creates a special protection scheme for domestic violence victims. The violation of an injunction is classified as a misdemeanor, and the violator is also subject to contempt proceedings. § 741.31, Fla. Stat. (1995). Although the legislature, perhaps unadvisedly, did not expressly state that police officers have an affirmative duty to arrest domestic violence injunction violators, it created a special category of crime victim and established a special relationship between the decedent in this case and the responsible governmental entity.
The Department's "discretion to enforce the law without being subject to tort liability to innocent third parties[,]" Everton, 468 So.2d at 937, is not unbounded. Particularly in view of a legislative directive to act to prevent tragic domestic violence scenarios, Officer Fuentes had a special relationship with the decedent, a domestic violence victim. This relationship gave rise to a cause of action once the officer released Hurd after having located him and placed him in the police car in response to a call alerting to a violation of a domestic violence injunction.
This conclusion is totally consistent with the legislature's clear public policy of preventing events such as occurred herein.
If the domestic violence protection statutes are to have real meaning or impact, law enforcement personnel must play an integral role in advancing the legislative protection scheme. The officers are the persons charged with implementing the legislature's safeguards and ensuring the success of the statutory protections. If law enforcement agencies and personnel are shielded from liability for failing to carry out the very protections established by the legislature, then the domestic violence injunction legislation is virtually meaningless and does not offer domestic violence victims any real protection. If the domestic violence protection injunction is to have any impact in preventing tragedies such as the one in this case, then violators must be arrested, without any police discretion on the matter because the police force is the only body with the capability and the duty to address these violations when they occur. To require anything less eviscerates the injunction and renders it a mere advisory court action that violators really need not heed.
NOTES
[1] Chapter 94-134, section 5, at 731, Laws of Florida, effective July 1, 1994, amended section 741.30(9)(b). Pursuant to that amendment, section 741.30(8)(b), Florida Statutes, contains substantially similar language as former subsection (9)(b).