718 So.2d 738 (1998)
PROVIDENT MANAGEMENT CORPORATION, Petitioner,
v.
CITY OF TREASURE ISLAND, etc., Respondent.
Laurence N. BELAIR, Petitioner,
v.
CITY OF TREASURE ISLAND, etc., Respondent.
Nos. 89093, 89094.
Supreme Court of Florida.
May 7, 1998.
Rehearing Denied September 10, 1998.
Steven L. Brannock, Karl J. Brandes and Stacy D. Blank of Holland & Knight, Tampa, Michael J. Keane of Keane & Reese, St. Petersburg, and Brian P. Battaglia of Battaglia, Ross, Dicus & Wein, P.A., St. Petersburg, for Petitioners.
W. Douglas Berry and William R. Lewis of Butler, Burnette & Pappas, Tampa, for Respondent.
Jorge Fernandez, President, Florida Association of County Attorneys, Tallahassee; Emeline C. Acton, Treasurer, Florida Association of County Attorneys and County Attorney of Hillsborough County, and Mary Helen Campbell and Julia C. Mandell, Assistant County Attorneys of Hillsborough County, Tampa, for Florida Association of County Attorneys, Amicus Curiae.
SHAW, Justice.
We have for review City of Treasure Island v. Provident Management Corp., 678 So.2d 1322 (Fla. 2d DCA 1996), based on conflict with Ross v. Champion Computer Corp., 582 So.2d 152 (Fla. 4th DCA 1991). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash Provident Management.
Many of the property owners in Land's End, a condominium complex comprising ten buildings and 177 units in Treasure Island, Florida, are absentee-owners and, since 1984, have employed Provident Management Corporation ("Provident") to manage the rental of their units. Laurence Belair bought a unit in 1984, subsequently purchased two more, and employed Provident as his rental agent. In May 1988, the City of Treasure Island ("City") issued a cease and desist order to both Provident and the unit owners, informing them that short-term rentals violated the City code. The City claimed that Provident and the unit owners were using Land's End properties for commercial purposes, as if Land's End were a motel or hotel, even though the properties were zoned for residential use. Several months later, the City obtained a temporary injunction barring Provident from acting as rental agent for Land's End properties. The order stated that the City was not required to post a bond. The injunction was affirmed on appeal (without written opinion). See Belair v. City of Treasure Island, 574 So.2d 145 (Fla. 2d DCA 1990); Provident Management Corp. v. *739 City of Treasure Island, 572 So.2d 916 (Fla. 2d DCA 1990).
The City subsequently sought a permanent injunction, and the trial court, after holding an evidentiary hearing, permanently enjoined Provident from maintaining an on-site rental office at Land's End (although Provident was allowed to act as an off-site rental agent), and barred Belair from renting any unit to third parties more than six times per calender year. Both Provident and Belair appealed. The district court reversed, holding that neither Provident nor Belair could be so restricted under the plain language of the code. See Belair v. City of Treasure Island, 611 So.2d 1285 (Fla. 2d DCA 1992). On remand, the trial court awarded damages to both Provident ($1,158,000) and Belair ($48,843) for their losses under the injunction. On appeal, the district court reversed, holding that "[i]n the absence of a bond, as in this case, or when a party seeks to recover damages beyond the amount of the bond, the party must allege and prove some other cause of action [such as malicious prosecution or unlawful taking]." 678 So.2d at 1325. We granted review based on conflict with SeaEscape, Ltd. v. Maximum Marketing Exposure, Inc., 568 So.2d 952 (Fla. 3d DCA 1990), wherein the district court ruled that damages for a wrongfully issued injunction are not always limited by the bond amount.
In Florida, injunction bonds are addressed by this Court's rules of procedure and Florida Statutes. Florida Rule of Civil Procedure 1.610 provides in part:
(b) Bond. No temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems proper, conditioned on the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined. When any injunction is issued on the pleading of a municipality or the state or any officer, agency, or political subdivision thereof, the court may require or dispense with a bond, with or without surety, and conditioned in the same manner, having due regard for the public interest. No bond shall be required on issuance of a temporary injunction issued solely to prevent physical injury or abuse of a natural person.
Fla. R. Civ. P. 1.610(b). Florida Statutes further provides:
60.07 Assessment of damages after dissolution.In injunction actions, on dissolution, the court may hear evidence and assess damages to which a defendant may be entitled under any injunction bond, eliminating the necessity for an action on the injunction bond if no party has requested a jury trial on damages.
§ 60.07, Fla. Stat. (1995). Though the rule and statute are silent concerning whether liability is limited to the bond amount, we answered that question in the affirmative in Parker Tampa Two, Inc. v. Somerset Development Corp., 544 So.2d 1018 (Fla.1989), wherein we held that "the damages which are recoverable for wrongfully obtaining an injunction [are] limited to the amount of the injunction bond." Id. at 1019. The City in the present case concludes that where no injunction bond is posted no damages are recoverable. We disagree.
This Court explained several reasons for limiting liability to the bond amount in Parker Tampa Two:
Limiting liability to bond amount thus provides an orderly step-by-step procedure whereby all parties can be continually apprised of the consequences of their actions. To hold the obtaining party fully liable would in many cases expose the party to potentially staggering consequential damages difficult or impossible to project. The public policy encouraging fair access to the courts for those who are in good faith pursuit of their equitable rights must be protected from the deterrent certain to be posed by unknown liability for mistake.
Id. at 1021 (footnote omitted). We did not, however, envision this analysis to be applicable where no bond whatsoever is posted by a city, as is permitted under rule 1.610(b).
We conclude that where a court "dispense[s] with a bond" pursuant to the provisions of rule 1.610(b), the enjoined party is entitled to seek the full measure of the damages it sustained by reason of the wrongfully issued preliminary injunction. This was the position advocated in the present case by *740 both the court and City when Provident requested a bond:
MR. FERGUSON (counsel for Provident): Sure. There is a bond issue here. It's undisputed, I think, from the testimony, that these people can lose substantial income.
THE COURT: I don't think a municipality is required to post a bond.
MR. FOREMAN (counsel for the City): We are not required to post bond.
THE COURT: They have unlimited resources. If they are damaged they can sue them.
The law says that they are not required to put a bond up. I mean I didn't pass that law, that is a Statute.
MR. FOREMAN: There you go.
To say that damaged parties are automatically barred from redress whenever a city posts no bond would impede the injunction process for governmental bodies, for if no citizen could obtain redress without a bond, courts would be reluctant to issue unbonded injunctions. This would thwart a purpose of rule 1.610(b), which is to make it easier, not harder, for governments to enforce their policies via injunctions. We note that the Florida Association of County Attorneys has submitted an amicus brief in the present proceeding opposing the City's view for this very reason.
Florida's cities are frequently called upon to protect the public interest via temporary injunctions and are presumed to be financially responsible. The reason for allowing a city to forego the posting of a surety bond is to save the municipality the expense, inconvenience, and delay in obtaining such a bond. Where no bond whatsoever is set, however, as in the present case, a city's exposure is uncertain. Accordingly, to give effect to rule 1.610(b) and to place cities on the same footing as private parties in this regard, a court may require a city to post a bond but without surety. This will fix the city's exposure at a particular amount and also protect the enjoined party in much the same manner as if a private party were seeking the injunction.
We decline to address the other issues raised by the Citythose issues are not a basis for our review and, as a rule, we eschew those claims not first subjected to the crucible of the appellate process. See generally Art. V, § 3(b), Fla. Const. We quash Provident Management and remand for proceedings consistent with this opinion. On remand, any issues previously raised but left unresolved can be addressed.
It is so ordered.
KOGAN, C.J., and HARDING, J., concur.
WELLS, J., concurs with an opinion.
OVERTON and ANSTEAD, JJ., dissent with an opinion.
GRIMES, Senior Justice, recused.
WELLS, Justice, concurring.
I concur with the majority opinion. I write to discuss the sovereign immunity issue raised in dissent.
The dissent by Justice Overton correctly states that sovereign immunity has been waived in this state only for actions sounding in tort and contract. Sovereign immunity is a shield that a governmental agency may raise to protect itself from answering to a claim for damages in a court of law. Sovereign immunity, however, is not a sword that may be used by the state when it invokes a court's equitable jurisdiction to enjoin a party and the injunction later turns out to be wrongful and causes damages to be incurred.
When the governmental body invokes a court's equitable jurisdiction, it necessarily casts aside its cloak of immunity and is like any other litigant. This view is in accord with that of other jurisdictions. See State v. Kilburn, 81 Conn. 9, 69 A. 1028, 1030 (1908) ("A sovereign who asks for equity must do equity."); State v. Bucholz, 169 Minn. 226, 210 N.W. 1006 (1926) (allowing defendant to recoup damages sustained in action commenced by state); State ex rel. Comm'rs of Land Office v. Sparks, 208 Okla. 150, 253 P.2d 1070, 1074 (1953) ("As a general rule, the State, when equitable relief is sought, must, like private individuals, bring itself within the known and fixed rules of equitable interference before the court will grant its petition.").
*741 I agree with this reasoning and would apply the same analysis to the instant situation and hold that a governmental body waives sovereign immunity when it takes the affirmative action of invoking a court's equitable jurisdiction. Moreover, if sovereign immunity barred recovery, there would be no reason to even mention the governmental bodies in rule 1.610(b).
Contrary to the dissent, I do not believe that my view would result in governmental agencies rejecting the option of injunctive relief. Rather, as the majority points out, the governmental agency can still avail itself of the protection afforded by Parker Tampa Two, Inc. v. Somerset Development Corp., 544 So.2d 1018 (Fla.1989).
Whether or not petitioner has a claim to business loss damages is an issue unrelated to sovereign immunity and must be addressed on remand.
OVERTON, Justice, dissenting.
I dissent. Based on the doctrine of sovereign immunity, I do not believe that Provident Management Corporation, a real estate management firm that is not a property owner, is entitled to any recovery other than costs and attorney fees.
This case involves the governmental enforcement of a land use ordinance which affects Provident's land management business. Provident claims $1.6 million in damages for loss of business income. If Provident were a property owner and if the City's actions constituted a total taking, Provident would be entitled to the fair market value of the property. Provident would be entitled to business loss damages only if it had been located on the property for five years. § 73.071(3)(a), Fla. Stat. (1995); see Department of Transp. v. Fortune Federal Sav. & Loan Ass'n, 532 So.2d 1267, 1269-1270 (Fla. 1988).
By failing to address the issue of sovereign immunity, the majority's decision could have broad ramifications for every government entity in this state. Procedurally, while sovereign immunity was an issue below, it was not discussed by the district court of appeal since the City had substantially prevailed on the injunctive issue in both the trial and appellate courts. The sovereign immunity issue was presented in the briefs in the district court and has been addressed by the parties before this Court. Having quashed the decision of the district court on the injunction issue, this Court should now fully address the sovereign immunity issue to determine the result in this case.
The majority's decision could be interpreted to mean that a government entity that uses injunctive means to enforce its laws and ordinances has waived sovereign immunity. This was the clear position of Provident in this case. Sovereign immunity has been waived in this state only for actions sounding in tort and contract. This is not a tort action and there is no allegation of a contract breach. The asserted offending action or conduct in this instance is the enforcement by a government entity of a legislatively enacted ordinance. There has never been a holding by any court of this state that sovereign immunity has been waived when a government entity seeks to enforce a validly adopted ordinance by an injunction. In my view, the City's conduct is an exercise of both its legislative and police power functions, which are clearly protected by sovereign immunity. Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla.1985); Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla.1981).
By failing to address the sovereign immunity issue, the majority's decision will be used as a basis for claims of business loss for non-property owners in land use cases since in this case Provident has no property interest in the properties it manages. Provident's contention that sovereign immunity has been waived could result in governmental entities rejecting injunctive relief as an enforcement remedy and force these government entities to pursue criminal justice or other police power remedies. In my view, instituting injunctive relief in civil court actually gives property owners much more of an opportunity to be heard than other enforcement remedies. To accept the view expressed by Justice Wells in his concurring opinion would mean the elimination of sovereign immunity for municipalities or, for that matter, any *742 governmental entity seeking a remedy in the equitable jurisdiction of the courts. That is clearly judicial legislation and contrary to the exclusive authority of the legislature to waive sovereign immunity under article X, section 13, of the Florida Constitution.
It is my view that the doctrine of sovereign immunity requires a finding that Provident has no basis to claim business loss damages. With regard to Laurence Belair, the owner of a condominium unit, I would find that the City could be found liable for loss of rental income only if there was an express finding of a taking. Provident's recovery should be limited to recovery of ordinary costs and attorney fees in this injunction proceeding. Belair may recover costs and attorney fees.
Sovereign immunity is a significant issue in this case and should be addressed by this Court.
ANSTEAD, Justice, dissenting.
It is said that "hard cases make bad law", and I fear that is the path this Court is following today. We should not recognize an exception to the clear rule announced by this Court in Parker Tampa Two because of a perceived trial court error in applying the rule. Trial court errors can be corrected on appeal, and that is especially true when an interlocutory appeal is available, as it was here, to timely deal with the problem.
Here, an injunction was entered and appealed. However, in the appeal no claim was raised that the trial court had erred in refusing to require a bond. Importantly, Parker Tampa Two was decided on June 1, 1989, almost one full year before the temporary injunction was entered, and the appeals in this case from the interlocutory order granting an injunction and denying a bond were not decided until over a year and one-half later, on December 21, 1990. In other words, even if we made the extreme assumption that no one in this case was on notice of the correct law on damages and bond requirements in injunction cases until the issuance of Parker Tampa Two, that notice was provided a year before the injunction was entered, and some eighteen months before the appeals were decided in this case. I believe that most would agree that this time period was more than adequate to allow Provident and Belair to challenge the trial court's ruling that the city did not have to post a bond.
Further, Justice Shaw's opinion for this Court in Parker Tampa Two was clear and unambiguous in its declaration:
When a court initially sets an injunction bond, this constitutes the court's determination of foreseeable damages based on the good faith representations that are before it. Fla.R.Civ.P. 1.610(b). Should this amount prove insufficient or excessive, an affected party is free to move for modification. A court order denying a motion to modify is directly appealable. Fla. R.App.P. 9.130(a)(3)(B) ("Review of nonfinal orders of lower tribunals is limited to those which ... refuse to modify or dissolve injunctions ...."). See, e.g., Minimatic Components, Inc. v. Westinghouse Elec. Corp., 494 So.2d 303 (Fla. 4th DCA 1986). Limiting liability to bond amount thus provides an orderly step-by-step procedure whereby all parties can be continually apprised of the consequences of their actions. To hold the obtaining party fully liable would in many cases expose the party to potentially staggering consequential damages difficult or impossible to project. The public policy encouraging fair access to the courts for those who are in good faith pursuit of their equitable rights must be protected from the deterrent certain to be posed by unknown liability for mistake.
Limiting liability to the bond amount can also be viewed as an equitable way of apportioning liability between the two entities generally at fault in the issuance of a wrongful injunction, i.e., the obtaining party and the court. The obtaining party often is at fault for asking the court to act hastily, requiring it to dispense with normal procedural safeguards. The court, on the other hand, at times simply misreads or misapplies the law independent of any time constraint imposed upon it by the obtaining party. Limiting liability to the bond amount strikes a median between holding the court fully liable (in which case no recovery could be had), and holding the obtaining party fully liable. Cf. United *743 Motors Serv. Inc. v. Tropic-Aire, Inc., 57 F.2d 479 (8th Cir.1932) (wrongfully issued injunction is court error for which no recovery is available).
Parker contends that its recovery should not be limited to the bond amount because it was given no notice of, or opportunity to participate in, the proceeding in which the bond was set. We disagree. The county, as a named party under the injunction, did participate in the proceeding, and later, on behalf of Parker, did move the court to increase the bond. Parker itself, subsequent to the initial bond proceeding, also moved to increase the bond amount and did participate in the injunction action as a party. We find that Parker had ample opportunity to participate in the setting of the bond via its right to move for an increase in the amount.
Parker Tampa Two v. Somerset Development, 544 So.2d 1018, 1021 (Fla.1989) (footnote and citation omitted). Unlike the aggrieved party in Parker Tampa Two, the petitioners here were, of course, parties to the action and had unlimited access and opportunity not only to litigate the issuance of an injunction and the requirement of a bond, but also to appeal the trial court's rulings on these issues. In Parker Tampa Two we held that Parker's interest was initially represented in the action by the county and later, subsequent to the initial bond proceeding, Parker intervened and participated in the injunction action. Based on those facts we concluded that "Parker had ample opportunity to participate in the setting of the bond via its right to move for an increase in the amount." Id. at 1021.
Obviously, in this case, the petitioners, as parties from the outset, had more than ample opportunity to participate in the injunction and bond proceedings. Further, unlike the litigants in Parker Tampa Two, the petitioners here also have been on express notice from this Court since June 1, 1989, that they could not recover damages on a wrongfully issued injunction unless a bond was required.
Finally, I simply would adopt the obviously correct and well reasoned opinion of the Second District resolving this case:
Rule 1.610(b) mandates a bond for most temporary injunctions when the petitioner is a private party. However, the rule further provides:
When any injunction is issued on the pleading of a municipality or the state or any officer, agency, or political subdivision thereof, the court may require or dispense with a bond, with or without surety, and conditioned in the same manner, having due regard for the public interest.
This provision gives the trial court discretion either to require or dispense with a surety bond. In this case, the trial court dispensed with the bond. The briefs in the nonfinal appeals reveal that neither Mr. Belair nor Provident argued this decision was an abuse of discretion.
In the late 1980s, there was considerable debate concerning the damages available under section 60.07. In June 1989, approximately one year before the entry of the temporary injunction in this case, the supreme court held that damages for a wrongful injunction under this statute were limited to the amount of the bond unless the injunction was obtained maliciously or in bad faith. Parker Tampa Two, 544 So.2d at 1021. Although Parker Tampa Two did not involve a municipality, nothing in that decision, in section 60.07, or in rule 1.610(b) suggests governmental agencies should be treated less favorably than private citizens. Cf. Town of Davie v. Sloan, 566 So.2d 938 (Fla. 4th DCA 1990) (limiting damages against municipality to the bond amount).
Under the holding in Parker Tampa Two, a defendant harmed by an injunction has two substantially different options for redress once the injunction has been dissolved. If a bond exists, then the defendant may invoke section 60.07 or otherwise seek damages under the terms of the bond. This action is governed by the terms of the surety's contract, but liability is usually established simply upon proof that the injunction was vacated. Parker Tampa Two, 544 So.2d at 1021; National Sur. Co. v. Willys-Overland Inc., 103 Fla. 738, 138 So. 24 (Fla.1931); Shea v. Central Diagnostic *744 Servs., Inc., 552 So.2d 344, 346 (Fla. 5th DCA 1989). Fault and culpability are not issues essential to recovery under the terms of the typical bond.
In the absence of a bond, as in this case, or when a party seeks to recover damages beyond the amount of the bond, the party must allege and prove some other cause of action. Without attempting to limit the available theories, we note that malicious prosecution is one option. See 43A C.J.S. Injunctions § 314 (1978). Additionally, when the plaintiff is a governmental agency, the harmed defendant may occasionally be able to prove a temporary or permanent taking under the due process clause. See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). In this case, Provident and Mr. Belair maintain that the City's conduct convinced them that it would act as its own surety and that governmental estoppel should therefore apply. See generally State, Dep't of Revenue v. Anderson, 403 So.2d 397 (Fla.1981); Greenhut Constr. Co. v. Henry A. Knott, Inc., 247 So.2d 517 (Fla. 1st DCA 1972); State, Dep't of Health & Rehab. Servs. v. Belveal, 663 So.2d 650 (Fla. 2d DCA 1995) (noting the difficulty involved in establishing promissory estoppel). Elements of these theories exist in the pleadings filed by Provident and Mr. Belair on remand from the last appeal. If the trial court had granted the City's motions for summary judgment, it also would have granted leave to Provident and Mr. Belair to file amended complaints. We express no opinion on their ability to plead and prove alternative theories, but Provident and Mr. Belair should be given an opportunity to amend their pleadings on remand.
City of Treasure Island v. Provident Management Corp., 678 So.2d 1322, 1324-25 (Fla. 2d DCA 1996) (footnote omitted).