738 So.2d 357 (1999)
CITY OF TREASURE ISLAND, a Florida municipal corporation, Appellant,
v.
PROVIDENT MANAGEMENT CORPORATION and Laurence N. Belair, Appellees.
Nos. 95-00806, 95-00807.
District Court of Appeal of Florida, Second District.
June 11, 1999.
*358 W. Douglas Berry and William R. Lewis of Butler, Burnette & Pappas, Tampa, for Appellant.
Steven L. Brannock, Stacy D. Blank, and Karl Brandes of Holland & Knight, Tampa, for Appellee Provident Management Corporation.
Leonard Smith, Rodney S. Fields, Jr., and Brian P. Battaglia of Battaglia, Ross, Dicus & Wein, P.A., Tampa, for Appellee Laurence N. Belair.
ALTENBERND, Judge.
We review this case on remand from the supreme court. See Provident Mgt. Corp. v. City of Treasure Island, 718 So.2d 738 (Fla.1998). The supreme court held that a municipality has liability for a wrongful injunction unless it obtains a bond to limit its liability. This contrasts with a private party, who generally has no liability for a wrongful injunction unless, and to the extent, that it has been required to obtain an injunction bond. See Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So.2d 1018 (Fla.1989). The supreme court declined to rule on several issues relating to the measure of damages in this case and on the issue of sovereign immunity.
*359 Concerning the measure of damages, although we are not convinced that we would have awarded damages as generous as those awarded by the trial court, the damages are supported by competent, substantial evidence and must be affirmed. Concerning sovereign immunity, we conclude that wrongful injunction is essentially a strict liability claim that is best categorized as a tort. The decision to enforce the zoning ordinance in this case prior to the conclusion of litigation was an operational decision that subjects the municipality to liability. Accordingly, sovereign immunity is waived for the incorrect decision of the municipality to obtain and enforce this injunction. This liability, however, is subject to the conditions of section 768.28(5), Florida Statutes (1989). On remand, the trial court shall remove the awards of prejudgment interest from the judgments and shall limit execution on the Provident judgment as specified in section 768.28(5).

I. THE LONG JOURNEY TO THE JUDGMENT ON APPEAL
The facts of this case have been detailed in several earlier decisions. See City of Treasure Island v. Provident Mgt. Corp., 678 So.2d 1322 (Fla. 2d DCA 1996); Belair v. City of Treasure Island, 611 So.2d 1285 (Fla. 2d DCA 1992). In a nutshell, beginning in 1984, Provident Management contracted with numerous owners of condominiums at the Land's End Condominiums to serve as a rental agent, renting their units on a short-term basis to tourists. Laurence N. Belair was one of these rental agents. The City of Treasure Island (City) concluded that this rental activity violated applicable zoning ordinances. In 1988, it issued a cease-and-desist order and then followed up with a complaint for injunctive relief. In May 1990, the trial court entered a temporary injunction, which this court affirmed. See Provident Mgt. Corp. v. City of Treasure Island, 572 So.2d 916 (Fla. 2d DCA 1990). Thereafter, the trial court entered a permanent injunction in June 1991, which this court reversed. See Belair, 611 So.2d at 1285.
On remand, Provident and Mr. Belair did not file separate actions or even an amended pleading against the City. They filed motions for damages. We emphasize this procedural fact because it has affected the subsequent proceedings in the case. The motions are the type of notice that a party would use to obtain damages under an injunction bond if one existed. See § 60.07, Fla. Stat. (1997). Such motions suffice when no party wishes to have a jury trial. The judgments on appeal were entered after a hearing more comparable to a complex hearing on motions to assess costs following an appeal than to a typical nonjury trial.
At the hearing, Mr. Belair argued that he had lost rental income on several units and that he had sold one unit at a reduced price while the injunction was in place. He also requested reimbursement for the attorneys' fees that he had incurred as a result of the injunction. The trial court determined that his damages, including lost market value, lost rents, and incurred attorneys' fees, totaled $39,051.00, and that the prejudgment interest on these damages was $9,792.00. Thus, the trial court entered a judgment totaling $48,843.00 in favor of Mr. Belair.
Provident argued that the injunction entirely destroyed its business at Land's End and that it could not re-establish the business when the permanent injunction was lifted in early 1993. Because there were few, if any, comparable sales of such businesses to use as a benchmark for the fair market value of the business, Provident's qualified expert relied upon total capitalized net cash flow to establish a fair market value of $1,158,000.00. This method relies primarily on predicted net income for a future period of ten years that is reduced to present value using a capitalization rate substantially in excess of the investment return on government bonds. In other words, the business is valued based on its predicted future ability to *360 generate profits in excess of those received upon a very safe investment. Although the City presented substantially conflicting evidence, the trial court accepted the testimony of Provident's expert and awarded damages of $1,158,000.00, measured as of June 3, 1991, for the destruction of the business. The trial judge awarded prejudgment interest at the rate of 12% totaling $495,719.05. It also awarded attorneys' fees of $84,269.54 plus prejudgment interest on the fees of $30,253.91. The judgment in favor of Provident totaled $1,768,242.50.
The City challenges the method by which Provident's damages were established, the precise calculation concerning the award of attorneys' fees, and the use of a 12% interest rate for judgments entered in 1994. We conclude that the trial court utilized the correct statutory rate of interest. See § 55.03, Fla. Stat. (1993). Although we are inclined to believe that the expert retained by Provident reached an extraordinarily generous evaluation of that business's fair market value, the trial court's decision on these damages is supported by competent evidence and we find no preserved, reversible error affecting this award.[1] Likewise, the awards of attorneys' fees are supportable in light of the long and difficult battle over the injunction. See Lake Worth Broadcasting Corp. v. Hispanic Broadcasting, Inc., 495 So.2d 1234 (Fla. 3d DCA 1986).

II. SOVEREIGN IMMUNITY
The parties present diametrically opposed positions on this issue. The City maintains that it has total immunity, whereas Provident and Belair argue that immunity is irrelevant. Although the supreme court declined to rule on the issue of sovereign immunity, it did hold that a party enjoined by a municipality "is entitled to seek the full measure of the damages it sustained by reason of the wrongfully issued preliminary injunction." See Provident Mgt. Corp., 718 So.2d at 739. As Provident argues, it is difficult to square this holding with a determination that total immunity exists.
We have struggled with the nature of a claim for wrongful injunction. It clearly is not a claim in contract. It appears to be a form of strict liability, in the sense that the city attorney does not need to be negligent or to commit malpractice for liability to exist. Indeed, the City is liable in this case, even though the injunction appeared proper to this court upon initial appellate review.
The injunction itself is equitable in nature and was obtained by invoking the jurisdiction of the judicial branch. The remedy for wrongful injunction, however, is monetary damages. It is difficult to distinguish these damages from the damages that might have occurred if a city truck driver had negligently driven a dump truck into the rental office, closing the rental operation for a period of months. The fact that the judicial branch of government is involved in creating these damages does not distinguish this claim from one sounding in malicious prosecution. Indeed, wrongful injunction appears to be a strict liability version of malicious prosecution.
In his special concurrence, Justice Wells suggests that sovereign immunity should be waived for any damage caused by an invocation of equitable jurisdiction. See Provident Mgt. Corp., 718 So.2d at 740. Justice Wells argues that the state must bring itself within the known and fixed rules of equity like any private individual. See State ex rel. Comm'rs of Land Office v. Sparks, 208 Okla. 150, 253 P.2d 1070 (1953) *361 (allowing defendant in suit brought by state to assert equitable defense and recognizing that state opens door to any defense or cross-complaint germane to matter in controversy when it sues in equity); State v. Bucholz, 169 Minn. 226, 210 N.W. 1006 (1926) (recognizing that defendant could raise recoupment defense against state, but not independent cause of action or counterclaim); State v. Kilburn, 81 Conn. 9, 69 A. 1028 (1908).
We hesitate to adopt Justice Wells' approach. First, we have located no authority for the proposition that the government's common law sovereign immunity did not apply in courts of equity. See I William Blackstone, Commentaries *238-239. Unless, under the common law, an exception existed for claims arising due to the government's invocation of equity, we assume the legislature would need to authorize such an exception by general law under article X, section 13, of the Florida Constitution. Section 768.28 does not create that authorization. Neither does section 60.07 because it only applies when an injunction bond exists. Moreover, the liability imposed in this case is unlike the liability imposed upon a private person, who has no liability in the absence of a bond. Under separation of powers, we agree that the judiciary has authority to refuse to employ its equity powers to assist other governmental entities with their enforcement functions unless and until the government posts a bond. However, we question whether we have the power to place unlimited liability on a municipality or an arm of the executive branch when it, in good faith, but erroneously, convinces us to impose injunctive relief. In light of section 768.28, we conclude that we cannot uphold a judgment against the City in this case unless the claim is in the nature of a tort claim.
Prosser suggests that "[b]roadly speaking, a tort is a civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages." William L. Prosser, Handbook of The Law of Torts, p. 2 (4th ed.1971). Wrongful injunction falls within this concept of civil wrong.[2] The duty to avoid the harms caused to a defendant by an inappropriate injunction is perhaps best explained as a special duty created when the government establishes a special relationship with a person by bringing suit against that person. See Everton v. Willard, 468 So.2d 936, 938 (Fla.1985); Simpson v. City of Miami, 700 So.2d 87 (Fla. 3d DCA 1997); Hartley v. Floyd, 512 So.2d 1022 (Fla. 1st DCA 1987). Although we conclude that the claim is in the nature of strict liability, we also conclude that wrongful injunction is a "wrongful act" for purposes of the waiver in section 768.28. See Schick v. Florida Dep't of Agric., 504 So.2d 1318 (Fla. 1st DCA 1987) (holding inverse condemnation action not barred by sovereign immunity).
Once it is decided that the duty exists in this context and that it is in the nature of a tort, the question arises whether monetary liability for breach of the duty is barred by sovereign immunity or whether that immunity has been waived by section 768.28. We conclude that the City has no immunity for this liability under the guidelines established in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (1979), and Trianon Park v. City of Hialeah, 468 So.2d 912 (Fla.1985). Under the Trianon Park analysis, we are addressing a category II decision to enforce the law. It is clear that the decision to enforce or not enforce the law is often a discretionary, policy-making decision. However, under the Evangelical Brethren[3] factors discussed in Trianon Park, the questioned act is the decision to obtain *362 an injunction prior to final judgment. We are not concerned in this case with a preliminary injunction to halt an activity creating grave health dangers. The City could have chosen to delay enforcement of the zoning ordinance until the legal action had run its course. We conclude that the decision to obtain a preliminary injunction and to enforce the permanent injunction while it was pending on appeal in this case was not a policy-level decision, but an operational decision. Accordingly, immunity for this decision is waived under section 768.28.[4]
On the other hand, the City's liability for torts under section 768.28 is not unlimited. The legislature has never waived the City's immunity from liability for prejudgment interest. See § 768.28(5), Fla. Stat. (1989).[5] Likewise, there is a $100,000.00 cap upon the liability that may be collected without a trip to the legislature.[6]Id. Accordingly, we affirm the trial court's decision to enter judgments against the City, but reverse the judgments to the extent that they contain prejudgment interest and reverse Provident's judgment to the extent that it contains no restriction upon execution.
We certify that the following question is one of great public importance:
DO THE LIMITATIONS ON LIABILITY IN SECTION 768.28, FLORIDA STATUTES (1989), APPLY TO A CLAIM FOR WRONGFUL INJUNCTION AGAINST A CITY THAT WAS NOT REQUIRED TO POST AN INJUNCTION BOND?
Affirmed in part, reversed in part, and remanded.
PARKER, C.J., and BLUE, J., Concur.
NOTES
[1] Even if a more conservative method of evaluation were used, the damages in this case would exceed the monetary cap established by section 768.28(5), Florida Statutes (1989). If this judgment is submitted to the legislature, that body will need to decide whether it wishes to be as generous as the trial judge. See Rice v. Brown, 645 So.2d 1020 (Fla. 2d DCA 1994). If the legislature orders payment in this case, it might be appropriate for payment to come from the state and not exclusively from the City.
[2] It is plausible that the City's actions constituted a taking under the due process clause or otherwise involved some constitutional violation for which the City might not have state immunity. Such a theory has never been pleaded or proven in this case.
[3] Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965).
[4] We remain troubled by the fact that the waiver in section 768.28 is for liability the City would have "if a private person." Because zoning enforcement is a governmental activity in which private citizens are not directly involved, we conclude that this language does not bar recovery in this case. See Commercial Carrier, 371 So.2d at 1014.
[5] We note that if Mr. Belair and Provident had alleged and proven an eminent domain takings claim rather than a wrongful injunction claim, Florida's constitution would require the City to pay prejudgment interest on reasonable costs incurred by the property owners notwithstanding the doctrine of sovereign immunity. See Boulis v. Florida Dep't of Transp., 24 Fla. L. Weekly S150, 733 So.2d 959 (Fla.1999). It is not clear, however, that they could have proven such a claim, or that they could have proven the City improperly exercised its police power under the due process clause. See Tampa-Hillsborough County Expressway Auth. v. A.G.W.S. Corp., 640 So.2d 54 (Fla.1994) (discussing the difference between an eminent domain takings claim and a violation of due process takings claim).
[6] The fact that the City may have insurance coverage in excess of $100,000.00 does not constitute a waiver of sovereign immunity. See § 768.28(5), Fla. Stat. (1989). Assuming, without deciding, that the City could be equitably estopped from raising the defense of sovereign immunity, the comments of the City's attorney quoted in the supreme court's opinion were insufficient to estop the City from raising sovereign immunity. See North American Co. v. Green, 120 So.2d 603, 610 (Fla.1959) (announcing general rule that equitable estoppel will be applied against the sovereign only in rare instances and under exceptional circumstances); State Dep't of Health & Rehab. Servs. v. Belveal, 663 So.2d 650 (Fla. 2d DCA 1995). See also Donisi v. Trout, 415 So.2d 730 (Fla. 4th DCA 1981) (noting that only legislature can waive sovereign immunity).