PER CURIAM.
The State of Florida, Department of Highway Patrol (collectively “FHP”) appeals an adverse final judgment entered pursuant to a jury verdict in this wrongful death action. We agree with FHP that the trial court erred in failing to direct a verdict in its favor where vthere was nothing to indicate that FHP’s actions or inac-tions were operational in nature and where FHP otherwise owed no special duty to the decedents, as a matter of law, so as to impose governmental tort liability. Accordingly, we reverse with directions that final judgment be entered in favor of FHP.
The facts of this truly tragic accident, taken in the light most favorable to the appellees [1], show that on September 5, 1993, at approximately 4:00 a.m., the decedents Suzanne Leeds and Elissa Pollack were instantly killed when the automobile that Suzanne was driving, and Elissa was a passenger, collided into the back of an unlit tractor-trailer which had stalled in the right-hand lane of the Palmetto Expressway.
Earlier that morning, at approximately 3:00 a.m., Daniel Baregas had been driving this tractor-trailer when it stalled on the Palmetto Expressway, about 1000 feet away from a crescent in the highway. At or about the same time, Raul Pedrero was driving home on the Palmetto when he suddenly encountered the stalled tractor-trailer in the right-hand lane which had no markers, lights, or flares.[2] Mr. Pedrero had to slam on his brakes and veer into the adjacent lane to avoid hitting the tractor-trailer.
Mr. Pedrero exited the Palmetto, went to a gas station and telephoned 911. His call was transferred to FHP, where Mr. Pedrero informed the dispatcher that there was a stalled tractor-trailer on the Palmetto Expressway which had no lights and no warning signs. He also advised the FHP dispatcher that he had almost hit the truck. The dispatcher told Mr. Pedrero that he would “send a unit to check it out.” Mr. Pedrero returned to the vicinity of the stalled tractor-trailer to await the arrival of FHP. He waited for twenty to twenty-five minutes, during which time he saw many vehicles take evasive action to avoid hitting the stalled tractor-trailer. When FHP did not show up after twenty-five minutes, Mr. Pedrero went home. Apparently, FHP’s dispatcher had failed to enter Mr. Pedrero’s call into the computer for assignment; consequently, no officer was dispatched to the scene.[3] At the time, the FHP had internal operating rules requiring it to dispatch a trooper to the scene of stalled vehicles.[4]
*448 Appellee, Steven Pollack (“Pollack”), as Personal Representative of the Estate of Elissa Pollack, his daughter, filed a •wrongful death action against FHP and others.[5] Thereafter, appellees Michael and Barbara Leeds (“Leeds”), as Personal Representatives of the Estate of Suzanne Leeds, also filed a 'wrongful death complaint against the same defendants for the death of their daughter Suzanne. The Leeds then sought a transfer of their case into the same division of the circuit court in which the Pollack case was pending. The transfer was granted, the cases were consolidated for trial, and heard before a jury. The jury returned verdicts in favor of the plaintiffs finding FHP fifty percent negligent and the tractor-trailer driver fifty percent negligent.
The FHP argues on this appeal, among other things, that the trial court erred in failing to direct a verdict in its favor where, as a matter of law, it did not owe the decedents any duty greater than the duty owed to the general public to protect them.[6] See generally Trianon Park Condo. Assoc., Inc. v. City of Hialeah, 468 So.2d 912, 914-15 (Fla.1985)(hold-ing that “there has never been a common law duty to individual citizens for the enforcement of police power functions.”); Everton v. Willard, 468 So.2d 936, 938 (Fla.1985)(stating that “A law enforcement officer’s duty to protect the citizens is a general duty owed to the public as a whole. The victim of a criminal offense, which might have been prevented through reasonable law enforcement action, does not establish a common law duty of care to the individual citizen and resulting tort liability, absent a special duty to the victim.”)(emphasis added). Thus, FHP claims that save the circumstances where the police’s duty is deemed operational, or where a special duty has been established between the police and the victim, there is no duty of care to an individual citizen. See e.g., Burnett v. Department of Corrections, 666 So.2d 882 (Fla.1996) (holding that the Department of Corrections “could not be held liable for the criminal acts of an escaped prisoner because no common law duty was owed by the department to protect a particular individual from harm.” (quoting Vann v. Department of Corrections, 662 So.2d 339, 340 (Fla.1995)); see also Laskey v. Martin County Sheriff’s Dept., 708 So.2d 1013, 1015 (Fla. 4th DCA)(law enforcement personnel generally owe no duty to members of the public at large), rev. granted, 718 So.2d 169 (Fla. 1998). Appellees, on the other hand, respond that a violation of FHP’s own internal operating procedures is sufficient to impose liability against FHP for its negligence. In support of their argument, ap-pellees rely on Cook v. Sheriff of Collier County, 573 So.2d 406 (Fla. 2d DCA 1991); Hoover v. Polk County Sheriff’s Dept., 611 So.2d 1331 (Fla. 2d DCA 1993); and this Court’s decision in Simpson v. City of Miami, 700 So.2d 87 (Fla. 3d DCA 1997). *449 We agree with the FHP that the state has no sovereign liability as a matter of established law and find the cases relied upon by the appellees to be distinguishable.
First of all, in Cook, plaintiff brought a wrongful death action against the sheriff based upon a stop sign which was down at an intersection. Two days prior to the accident, a local resident had called 911 and alerted the sheriff that the stop sign was down. The trial court dismissed the complaint, with prejudice, for failure to state a cause of action. The second district reversed, finding:
Mrs. Cook alleged, ..., in her second amended complaint that according to the state of Florida and the Collier County 911 Plans and section 365.171, Florida Statutes (1985), the sheriff had a duty to relay the information concerning the sign because this was an established procedure contained in the plans. Although we do not find such a duty in section 365.171, we cannot determine whether the individual plans establish such a duty because they are not in the record and apparently were not reviewed by the trial court.
Cook, 573 So.2d at 408 (Emphasis added). Thus, the second district simply determined that because the matter was before it on a dismissal of the complaint and because there were allegations in the complaint that the 911 Plans, which were not part of the record, might give rise to 'a duty owed to the claimant, that it was bound to take the allegation of the complaint as true, and send the case back to the trial court because the complaint did state a cause of action.[7] The second district never considered the question of duty or whether violation of an internal policy would constitute a breach of duty.
Similarly, in Hoover, on appeal from a dismissal of a complaint, the court held that a complaint which alleged that the sheriffs failure to remove an abandoned vehicle allegedly parked less than two feet form the edge of a roadway, stated a cause of action. 611 So.2d at 1333. Thus, as was true in Cook, the second district reversed the granting of a motion to dismiss without making a determination as to whether there was a duty owed to the plaintiff that would allow for recovery.
Moreover, this Court’s holding in Simpson v. City of Miami, supra, is also distinguishable from this case. In Simpson, we held that a wrongful death suit against the city’s police department would not be barred by sovereign immunity if it was alleged that the police released, after an arrest, a domestic violence injunction violator, without taking the violator before the court as prescribed by section 741.30(9)(b), Florida Statutes.[8] Unlike Simpson, in this case, there was no specific legislative enactment dictating a response or the response time of FHP to the scene of this accident.[9] Rather, as appel- *450 lees conceded at oral argument, their asserted basis of FHP’s liability in this cause is its failure to comply with its own internal non-discretionary rules and policies requiring it to dispatch a trooper to the area where the tractor-trailer was stalled. We believe, however, as do courts from other states and federal jurisdictions that:
Agency protocols and procedures, like agency manuals, do not have the force or effect of a statute or an administrative regulation. Rather, they provide officials with guidance on how they should perform those duties which are mandated by statute or regulation. See, e.g., Schweiker v. Hansen, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (Social Security Administration [SSA] Claims Manual “has no legal force, and it does not bind the SSA”); Jacobo v. United States, 853 F.2d 640, 641-642 (9th Cir.1988) (failure of naval officer to comply with naval manual will not support a negligence claim); Stath v. Williams, 174 Ind.App. 369, 367 N.E.2d 1120, 1124-1125 (1977) (no civil liability when coroner complied with statute, but allegedly violated internal protocols for performing autopsy and investigation); Mervin v. Magney Construction Co., 416 N.W.2d 121, 124-125 (Minn.1987) (construction procedures prescribed by Army Corps of Engineers manual cannot establish a standard of care because the manual was never subjected to the scrutiny of the legislative process or the rulemaking safeguards of the Administrative Procedure Act). In the instant case, therefore, we hold that the EMS procedures and protocols are equivalent to the Metropolitan Police Department’s ' “general orders,” which, unlike a statute, cannot create a special duty to a protected class. Morgan v. District of Columbia, [468 A. 2d 1306, 1317-1318 (D.C. 1983)(en banc) ]; accord, Isaksson v. Rulffes, 135 A.D.2d 611, 522 N.Y.S.2d 189 (1987).
Wanzer v. District of Columbia, 580 A.2d 127, 133 (D.C.Ct.App.1990); see also Barnes v. Antich, 700 N.E.2d 262, 265 (Ind.Ct.App.l998)(holding that “the operation of an emergency dispatch system constitutes a governmental function entitled to immunity from tort liability .... a municipality would be immune from liability for the negligent operation of its 911 system which resulted in the failure to dispatch emergency assistance and which ultimately resulted in the deaths of two persons) (citation omitted).
Thus, we hold that a governmental agency’s policy or procedure manual cannot, standing alone, create an independent duty to individual citizens. Sovereign immunity, therefore, cannot be waived by any “duty” described in an agency’s manual. Any waiver of sovereign immunity must come through legislative enactment. See Hess v. Metropolitan Dade County, 467 So.2d 297, 300 (Fla.l985)(legislature is the only entity that can provide a waiver of sovereign immunity). Moreover, regarding the facts of this case, we agree with our sister court in Laskey which stated that: “[a]ny duty to relay calls regarding traffic offenders is a duty owed the public as a whole and not to any third party who may subsequently be injured by the act of the traffic offender.... To hold otherwise would result in liability being imposed in absurd scenarios.” Laskey, 708 So.2d at 1014 (citations omitted).
Based upon the foregoing we find that FHP’s actions or inactions were not operational in nature and that no special duty was owed to the decedents so as to constitute a waiver of sovereign immunity. Accordingly, FHP’s motion for directed verdict should have been granted on this issue. Our disposition of this issue thus renders the remaining issues on the direct and cross appeal moot. Although we find Hoover, 611 So.2d at 1331 and Cook, 573 So.2d at 406 to be distinguishable from a procedural standpoint with this *451 case, the two are sufficiently factually similar for us to acknowledge conflict.
Reversed and remanded with directions to enter final judgment in favor of the FHP. Conflict certified.

. See Woods v. Winn Dixie Stores, Inc., 621 So.2d 710, 711 (Fla. 3d DCA 1993)(stating that "[i]n determining a motion for directed verdict, the evidence, and all reasonable inferences, therefrom, must be viewed in a light most favorable to the nonmoving party.”).

. Moreover, the street lighting in the area was out, which made it all the more difficult to see the tractor trailer.

. The evidence at trial showed that officers were available to answer the call had it gone out.

. The FHP Communication Policy/Procedures Manual, Policy 12.04.03 General Information provides in relevant part:
All reports of vehicle crashes or incidents received in the communications center shall immediately be dispatched to the ap *448 propriate trooper. If the reported crash or incident is within a city limit, then it shall be reported to the local police department.
If there is going to be a delay in dispatching a crash or incident report due to manpower shortage, then the appropriate FHP supervisor shall be notified. This notification shall be documented on the dispatch card.
No matter how the information is received, a duty officer should learn how to quickly edit given information into the Official Standards, and then broadcast it.
In addition, Rule 12.00.00 entitled Crash Prevention, provides:
Crash prevention and crash investigation are the primary functions of the Florida Highway Patrol and the duty officer's role in these endeavors are of major importance. Strict adherence to this chapter will enable every officer to handle these responsibilities in an efficient and professional manner.

. The other defendants sued by Pollack, but not parties to this appeal, were Flash Import and Export (“Flash”), the owner of the stalled tractor-trailer; Gabino Ramas who hired Mr. Baregas to drive the tractor-trailer for Flash; and Mr. Baregas individually as the driver.

. This issue was raised on summary judgment, directed verdict and motion for new trial, and was consistently denied.

. See Maciejewski v. Holland, 441 So.2d 703, 704 (Fla. 2d DCA 1983)(aII material allegations of the complaint are taken as true; court is not allowed to speculate as to whether allegations can be proven at a later time).

. Section 741.30(9)(b) provides in pertinent part that:
In the event the respondent is arrested by a law enforcement officer under the authority of s. 901.15(6) or for violation of s. 741.31, the respondent shall be held in custody and brought before the court as expeditiously as possible for the purpose of enforcing the injunction. The respondent may be admitted to bail in accordance with the provisions of chapter 903 and the applicable rules of criminal procedure, pending a hearing.
§ 741.30(9)(b), Fla. Stat. (1993).

. Appellee, Pollock, argues that FHP had duties and obligations pursuant to section 321.05, Florida Statutes, which provides in pertinent part:
Duties, functions, and powers of patrol officers.-The members of the Florida Highway Patrol ... shall perform and exercise throughout the state the following duties, functions and powers: (1) To patrol the state highways and regulate, control, and direct the movement of traffic thereon;
§ 321.05, Fla. Stat. (1993). Clearly, unlike the statute in Simpson, this statute does nothing more than describe a general duty of the *450 Florida Highway Patrol to the citizens of Florida as a whole.