756 So.2d 262 (2000)
Donald DARIO and Judy Dario, his wife, Appellants,
v.
Richard D. ROTH, Sheriff of Monroe County, Florida, Appellee.
No. 3D99-2532.
District Court of Appeal of Florida, Third District.
May 3, 2000.
*263 Howard P. Alterman, Delray Beach, for appellants.
Purdy, Jolly & Gluffreda, P.A., and Alexis M. Yarbrough, Fort Lauderdale, for appellee.
Before COPE, GREEN and SHEVIN, JJ.
COPE, J.
Donald and Judy Dario appeal an adverse summary judgment in their negligence action against the sheriff of Monroe County. We affirm.
The judgment entered by Circuit Judge Sandra Taylor sets forth the appropriate analysis as follows:
On the night of April 29, 1993, the Plaintiff Motorists [Donald and Judy Dario] were driving west across the Overseas Highway's Bahia Honda Bridge. At approximately 10:20 p.m., a key deer that had been walking beside the traffic lanes suddenly darted across the road in front of the Plaintiff Motorists' car. The Driver [Donald Dario] was unable to stop the car and struck the deer. The driver lost control of the car as a consequence of striking the deer and the deer being tossed upward into the windshield of the car. The car struck the concrete side barriers of the bridge. As a result of the foregoing event, the Driver was severely injured and the car was totaled.
The Plaintiff Motorists seek to hold the Sheriff liable for their damages because several callers had informed the Sheriff's office that there was a key deer on the bridge and/or its approaches. The warning calls had been received over an undetermined period of time, but for several hours at least, before the accident. Those who called were told that the Sheriff's office would respond appropriately. However, instead of taking direct action, the dispatcher in the Sheriff's office called the office of the National Key Deer Refuge and left a message asking for a return call on an answering machine.
It is undisputed that the Plaintiff Motorists were not among the number who called the Sheriffs' office concerning the deer and equally undisputed that they did not even know at the time of the accident that anyone had called. It necessarily follows there was no reliance by the Plaintiff Motorists on any assurances that the dispatcher for the Sheriff's office might have given a caller concerning an appropriate response.
There are two basic cases which examine the issue of sovereign immunity in the context of law enforcement's act or failures to act: Everton v. Willard, 468 So.2d 936 (Fla.1985), reh. den. (1985), in which there was no liability based on a deputy sheriff's exercise of discretion in enforcing the law, and *264 Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989), reh. den. (1989), in which the Supreme Court held that once the discretion had been exercised, the issue of foreseeability of injury under the circumstances at least created a question for the jury.
In Everton, the Supreme Court held that there was no tort liability when a deputy sheriff decided to issue a citation to a drunk driver rather than arrest him. Fifteen minutes after the deputy chose to let him go on his way, the drunk driver was involved in a fatal accident. In finding no liability, the Court said,
"A law enforcement officer's duty to protect the citizens is a general duty owed to the public as a whole. The victim of a criminal offense, which might have been prevented through reasonable law enforcement action, does not establish a common law duty of care to the individual citizen and resulting tort liability, absent a special duty to the victim." Everton at 938.
Law enforcement has been held liable when an initially discretionary and, therefore, immune action created a situation which could be classified as operational, where law enforcement is not immune. Thus, in Kaisner, the Supreme Court found that the issue of foreseeability was a question for the jury when a police officer allowed a driver who had been placed in custody to remain in an area of risk. The driver who had been pulled over got out of his car and approached the police cruiser. He was told to stop when he was between his car and the cruiser. The driver was injured when another car rear ended the cruiser and forced it into him.
The Court found that the driver had not been free to leave the area between the vehicles where he had been ordered to stop. Consequently, without running the risks entailed in disobeying the officer's order, he had lost the ability to protect himself from the hazards of traffic.
"Where a ... [police officer's] conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon ... [the police officer] either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." (Citations omitted.) [543 So.2d], at 735. See also Henderson v. Bowden, [737 So.2d 532] (Fla. July 8, 1999).
As the excerpt from opinion in Everton, supra, suggests, liability may also be found, when there is a "special duty" owed to the plaintiff or "special relationship" between the plaintiff and law enforcement. Thus, in Hartley v. Floyd, 512 So.2d 1022 (Fla. 1st DCA 1987), the sheriff was held to be liable when, at the request of the missing man's wife, a deputy agreed to do certain, specific tasks in an effort to locate the husband. In fact, the deputy did not perform any of the tasks, as a consequence of which the husband died. The sheriff argued he could not be liable for a person's injuries unless he owed a special duty to a person beyond the general duty owed the public at large. The First [D]istrict agreed that
"... [w]hile this is a correct statement of law[,] it is not applicable to the facts in this case where[,] notwithstanding the absence of any preexisting special duty to Mrs. Floyd, the sheriff's office agreed to perform certain activities at her request. Once again, having assumed the undertaking[,] the sheriff's office had an obligation to carry it out with reasonable care. The sheriff's deputy negligently failed to perform the assumed responsibilities, and the sheriff can therefore be held liable for his negligence." Id., at 1024.
In the case before the Court, there can be no suggestion that the Sheriff had any duty toward the Plaintiff Motorists *265 beyond the duty owed the general public to enforce the law. The Plaintiff Motorists did not themselves seek the removal of the key deer from the bridge and, indeed, were unaware that anyone else had. Obviously, the Sheriff never undertook a special duty to the Plaintiff Motorists.
The facts of the present case are virtually the same as those of Laskey v. Martin County Sheriff's Department, 708 So.2d 1013 (Fla. 4th DCA 1998) [review granted, 718 So.2d 169 (Fla. 1998)]. There an action was brought against the sheriff for failure to dispatch law enforcement to warn other drivers and/or to intercept a vehicle traveling in the wrong direction on I-95. The sheriff had been warned of the situation through a 911 call. Apparently conceding that the sheriff could not be held liable to an individual for failure to enforce the law, the plaintiff argued that maintenance of the 911 system was a health and welfare, operational function of government which was not immune to tort liability. The Fourth District disagreed.
"We find that the operation of a 911 emergency call system is a part of the law enforcement and protection of public safety service provided by a sheriff's office and therefore falls within category II. Any duty to relay calls regarding traffic offenders is a duty owed the public as a whole and not to any third party who may subsequently be injured by the act of the traffic offender." Id. at 1014.
In view of the foregoing analysis, the Sheriff is entitled to a judgment as a matter of law.
We entirely agree and adopt Judge Taylor's analysis as our own. See also State Department of Highway Patrol v. Pollack, 745 So.2d 446 (Fla. 3d DCA 1999).
The plaintiff motorists also argue that the sheriff had a statutory duty to remove the deer because of the state-wide livestock law. See §§ 588.12-.25, Fla. Stat. (1991). The statute states, in part, that "[i]t shall be the duty of the sheriff or her or his deputies or designees ... where livestock is found to be running at large or straying, to take up, confine, hold, and impound any such livestock, to be disposed of as hereinafter provided." Id. § 588.16.
To begin with, we agree with the sheriff that the livestock law does not apply to wild deer. The statute defines "livestock" to "include all animals of the equine, bovine, or swine class, including goats, sheep, mules, horses, hogs, cattle, ostriches, and other grazing animals." Id. § 588.13(1) (Supp.1992). The statute provides civil liability for any owner who permits livestock to run at large upon or stray upon the public roads. See id. § 588.15 (1991). "Livestock `running at large' or `straying' shall mean any livestock found or being on any public road of this state and either apparently a neglected animal or not under manual control of a person." Id. § 588.13(3). The statute contains provisions regulating the care and disposition of such livestock that have been impounded by law enforcement or animal control personnel. See §§ 588.17-.23. Read as whole, the statewide livestock law addresses domesticated animals that have strayed or escaped the owner. This would not include wild deer, which another statute describes as "game." See id. § 372.001(3) (defining "game" to include deer).
Assuming arguendo, however, that the statewide livestock law applied to wild deer, there would still be no liability because there was no special duty running from the sheriff to these plaintiffs, based on the authorities cited earlier in this opinion. See also Carter v. City of Stuart, 468 So.2d 955 (Fla.1985).
Affirmed.